UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

JORDAN LEMIEUX, JOHN            )
KADLEWICZ, JOSEPH O'CONNOR      )
CHRIS BUTLER, and DAVID R.      )
REX, JR., et al, Individually   )
and on Behalf of All Other      )
Persons Similarly Situated,     )
         Plaintiffs             )
                                )
              v.                )  C.A. NO. 08-cv-30038-MAP
                                )
CITY OF HOLYOKE AND             )
HOLYOKE FIRE DEPARTMENT,        )
         Defendants             )


<u>MEMORANDUM AND ORDER REGARDING PLAINTIFFS' MOTIONS FOR
PARTIAL SUMMARY JUDGMENT, DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT, DEFENDANTS' MOTION FOR JUDGMENT ON THE
PLEADINGS, AND PLAINTIFFS' MOTIONS TO STRIKE</u>
(Dkt. Nos. 134, 141, 152, 155, 158, 161, 164, 167, 179, and
180)

September 28, 2010

PONSOR, D.J.

## I. <u>INTRODUCTION</u>

Plaintiffs, Jordan Lemieux, John Kadlewicz, Joseph
O'Connor, Chris Butler, and David R. Rex, Jr., (collectively
"Plaintiffs"), bring this class action suit against the City
of Holyoke and its Fire Department, (collectively, "the
City" or "Defendants"), on behalf of themselves and other
similarly situated current and former Holyoke firefighters,
see 29 U.S.C. § 216(b), alleging violations of the federal
Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 <u>et seq.</u>,

and the Massachusetts Minimum Fair Wages Act, Mass. Gen.
Laws ch. 151, §§ 1A and 1B.  Plaintiffs seek overtime
compensation, including certain contractual wage augments,
for hours worked in excess of forty per week during the
period from January 21, 2005, to the present.

Currently, there are eight dispositive motions before
the court.  Plaintiffs have filed six motions for partial
summary judgment, each addressing a discrete issue and
requesting judgment in Plaintiffs' favor on that issue.
(Dkt. Nos. 134, 152, 155, 158, 161 & 164.)   Plaintiffs'
motions address: (1) the applicability of the FLSA's partial
exclusion for municipal employers of fire personnel, 29
U.S.C. 207(K); (2) the need to include certain contractual
wage augments in the FLSA's "regular rate" of pay; (3) the
applicability of Defendants' laches affirmative defense; (4)
the applicability of the doctrines of accord and
satisfaction and waiver to Plaintiffs' claims; (5)
liquidated damages under the FLSA; and (6) the applicability
of Massachusetts Minimum Fair Wage law to municipal
employers.  Defendants have opposed each of Plaintiffs'
motions, and they have filed a cross-motion for partial
summary judgment regarding the applicability of the 207(K)
partial exclusion (Dkt. No. 167) and a motion for judgment

on the pleadings regarding the applicability of
Massachusetts Minimum Fair Wage law to municipal employers.
(Dkt. No. 141.)

Counsel for the parties appeared for argument on their
motions on March 10, 2010, at which time Plaintiffs
submitted two motions to strike portions of affidavits
submitted by Plaintiffs.   (Dkt. Nos. 179 & 180.)

## II. PROCEDURAL BACKGROUND

Plaintiffs filed their original complaint on February
27, 2008, (Dkt. No. 1), followed by an amended Complaint
nearly twenty months later on October 22, 2009. (Dkt. No.
131.)  On November 6, 2009, Defendants filed an answer to
the First Amended Complaint (Dkt. No. 133) denying the
allegations against them, asserting two counter-claims
against Plaintiffs, and setting forth thirty affirmative
defenses.

## III. FACTUAL BACKGROUND

By and large, the relevant background is not in
dispute.  During the period of January 21, 2005, to the
present (hereinafter "the relevant period"), Plaintiffs were
employed as firefighters by the City of Holyoke.  Through
their union membership, Plaintiffs were parties to a
collective bargaining agreement ("CBA"), which governed the
terms and conditions of their employment with the City.

(<u>See generally</u> Dkt. No. 178, Defs.' Statement of Facts, Ex. 2, the 2006 - 2009 Collective Bargaining Agreement, (hereinafter the "CBA").)

Under the terms of the CBA, firefighters on the rotating shift typically worked four consecutive days -- two day shifts and two night shifts -- followed by four consecutive days off. (CBA ¶ 15.01.) Based on this pattern, a firefighter's four-days-on stretch began on a particular day of the week (for example on a Monday) every fifty-six days. Day shifts were typically ten hours in length while night shifts were fourteen hours. <u>Id.</u> The court accepts, as Plaintiffs assert and Defendants concede, that working within this framework, Holyoke firefighters routinely worked in excess of forty hours a week.

In addition to their usual salaries, the terms of the CBA made Holyoke firefighters eligible, in certain circumstances, to receive additional remuneration, including: training stipends; "out of grade" pay; longevity pay; payments for working the night before, day of, or night of major holidays; "buy-backs" for accrued but unused vacation, holiday, personal, and sick leave pay; detail pay; Student Awareness of Fire Education ("SAFE") pay, and clothing allowances.

## IV. <u>EVIDENTIARY OBJECTIONS</u>

4

As noted, Plaintiffs make a number of evidentiary objections concerning affidavits filed by Defendants in support of their motions and include them in motions to strike (Dkt. Nos. 179 & 180.)  For the most part, the court has not relied on the evidence under objection.  Where this Order indicates that such evidence was relied upon, the applicable portion of the motions to strike are denied.

V. <u>DISCUSSION</u>

A. <u>Legal Standard</u>.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  An issue is "genuine" if "the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party," and a fact is "material" if "it is one that might affect the outcome of the suit under the governing law."  <u>Velez-Rivera v. Agosto-Alicea</u>, 437 F.3d 145, 150 (1st Cir. 2006) (quotation omitted).

The moving party bears the initial burden of demonstrating the absence of genuine issues of material fact.  The burden then "shifts to the nonmoving party, with

5

respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor." Sands v. Ridefilm Corp., 212 F.3d 657, 661 (1st Cir. 2000) (quoting DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997)).  The opposing party "cannot rely on an absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute."  McCarthy v. Nw. Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995).  The court must then "view the facts in the light most favorable to the non-moving party" and draw "all reasonable inferences in that party's favor." Pac. Ins. Co. v. Eaton Vance Mgmt., 369 F.3d 584, 588 (1st Cir. 2004) (quotation omitted).

B. Application.

1. The 29 U.S.C. 207(K) Partial Exclusion.

Under section 207(a)(1) of the FLSA, non-exempt employees must ordinarily receive compensation at a rate not less than "one and-one-half times [their] regular rate" for hours worked in excess of forty per week.  29 U.S.C. § 207(a)(1).  A "limited exception" from the FLSA's overtime requirements is available, however, to municipal employers of "law enforcement personnel or firefighters" under subsection 207(k) of the statute.  29 U.S.C. § 207(k).  When applicable, this limited exemption

6

allows cities and towns "a higher threshold number of hours that public safety personnel can work in a twenty-eight day work period -- or a proportional number of hours in a shorter work period of at least seven days -- before these employees become entitled to overtime compensation." Calvao v. Town of Framingham, 599 F.3d 10, 13 (1st Cir. 2010). Thus, a municipally employed firefighter who works an established work period of twenty-eight days is only entitled to receive overtime compensation for hours worked in excess of 212 during that period. 29 C.F.R. § 553.230(a). Similarly, a municipally employed firefighter who works an established work period of eight days is only entitled to receive overtime compensation for hours worked in excess of 61 during that period. 29 C.F.R. § 553.230(c).

To claim a section 207(k) exemption, an employer need only demonstrate: (1) that its employees are engaged in "fire protection . . . [or] law enforcement activities" within the meaning of the statute, and (2) that it has adopted a qualifying "work period" -- defined by regulation as "any established and regularly recurring period of work which is at least seven but no more than twenty-eight consecutive days in length." 29 C.F.R. § 553.224(a).

It is well established that "[t]he work period requirement is ordinarily not a high hurdle." O'Brien v. Town of Agawam, 350 F.3d 279, 291 n.21 (1st Cir. 2003) (overruled on other grounds by 14 Penn Plaza LLC v. Pyett, 129 S. Ct. 1456, 1463 (2009)).  "Virtually any bona fide, fixed, recurring period of between 7 and 28 days will suffice."  Id.

Conceding that Plaintiffs were engaged in fire protection activities within the meaning of the statute, Plaintiffs argue that Defendants are not entitled to claim the 207(k) exemption because Defendants did not adequately "announce, establish, adopt, or implement a 207(k) work period."  In their cross-motion, Defendants argue that members of the rotating shift at the Holyoke Fire Department are subject to a qualifying eight-day work period pursuant to § 207(k).

Plaintiffs' arguments are largely foreclosed by the First Circuit's recent opinion in Calvao v. Town of Framingham, 599 F.3d at 13.  There, the court clarified that a municipality need not give notice to its officers before taking advantage of the 207(k) exemption.  Id. Essentially, public employers can establish a 207(k) work period either by declaring their intent to do so or simply by demonstrating that their employees "actually

work a regularly recurring cycle of between 7 and 28 days." <u>Spradling v. City of Tulsa</u>, 95 F.3d 1492, 1505 (10th Cir. 1996).

Here, the uncontested record clearly supports Defendants' assertion that Plaintiffs were subject to a qualifying eight-day work period at all relevant times. It is plain that Holyoke firefighters' rotating shifts occurred in a recurring pattern of four consecutive days on-duty followed by four consecutive days off-duty.  This "established and regularly recurring" eight-day work period satisfies the requirements of the statute and entitles Defendants to the benefits of the 207(k) exemption.  <u>Gallagher v. Lackawanna County</u>, 2010 U.S. Dist. LEXIS 31841 (M.D. Pa. Mar. 31, 2010); [[2009 DOLWH LEXIS 23 (DOLWH 2009)]] (advising that a four-days-on/four-days-off work schedule qualifies as a regularly recurring work period under the FLSA).[1]  Accordingly,

_____

[1] Plaintiffs' alternative argument -- that the court should ignore the four-on/four-off pattern and focus instead on the 56-day "duty cycle" described in the CBA -- is unpersuasive.  Department of Labor regulations explicitly provide that the FLSA work period need not be determined with reference to "the duty cycle or pay period or with a particular day of the week or hour of the day."  29 C.F.R. § 553.224(a).  <u>See</u> <u>also</u> <u>Franklin v. City of Kettering</u>, 246 F.3d 531, 535 (6th Cir. 2001) (distinguishing "work periods" under the FLSA from independent duty cycles of employees).

Defendants' motion for summary judgment that they are entitled to claim a § 7(k) partial exemption will be allowed.  Plaintiffs' motion to the contrary will be denied.  Moreover, since the § 207(k) partial exception to the overtime pay requirement applies, the court will find that the FLSA only required Defendants to pay Plaintiffs overtime compensation for hours worked excess of 61 in an eight-day cycle.  29 C.F.R. § 553.230(c).

2. <u>Calculation of the Regular Rate of Pay Under the FLSA</u>.

Because the FLSA requires overtime compensation to be paid at "a rate not less than one and one-half times the regular rate at which [an employee] is employed," 29 U.S.C. § 207(a), "[c]alculation of the correct 'regular rate' is the linchpin of the FLSA overtime requirement." <u>O'Brien</u>, 350 F.3d at 294.  Under the terms of the CBA, Holyoke firefighters, in certain circumstances, are entitled to receive augments to their base salary.  At issue is whether the FLSA requires Defendants to include eight of these contractual remunerations -- yearly personal day buy-back; yearly sick day incentive pay; yearly sick leave buy-back pay; sick leave buy-back upon retirement, resignation, or death; vacation buy-back upon retirement; yearly holiday pay; detail pay; and Student Awareness of Fire Education ("SAFE") pay -- in

10

Plaintiffs' "regular rate" for the purpose of calculating overtime compensation.  Plaintiffs argue that the statute requires this; Defendants argue that it does not.[2]

The FLSA defines "regular rate" to include "all remuneration for employment paid to, or on behalf of, the employee" unless it falls under one of the eight expressly provided exclusions listed in paragraphs (1) through (8) of subsection (e) of the FLSA.  29 U.S.C. § 207(e)(1)-(8).  This "list of exceptions is exhaustive, the exceptions are to be interpreted narrowly against the employer, and the employer bears the burden of showing that an exception applies."  O'Brien, 350 F.3d at 294 (citations omitted).

For the reasons that follow, the court holds that Defendants are obligated to include yearly personal day buy-back, yearly sick day incentive pay, yearly sick leave buy-back pay, and sick leave buy-back upon

_____

[2] Defendants concede that, to the extent that they were received by individual defendants, the following wage augments need to be included in the "regular rate" calculation as a matter of law: a $30.00 training pay/education pay stipend; "out of grade" pay; a defibrillator stipend; an EMT stipend; longevity pay; payments for working the night before, day of, or night of the six major holidays as described in the CBA; a training officer stipend; a fire prevention officer stipend; a $3,000.00 per year HAZMAT stipend, and clothing allowance pay.  (Dkt. No. 175 Defs.' Opp. to Plfs.' Mot. for Summary Judgment, 2, n.1.)

11

retirement, resignation, or death in the officers'
"regular rate" under the FLSA.

a. Buy-Back Provisions.

     The CBA entitles Holyoke firefighters, subject to
certain conditions, to sell back to the city sick leave
time, vacation time, personal time, and holiday time that
they have accrued but not used.  Plaintiffs argue that
the city is required to include the value of these "buy-
backs" in the "regular rate" because they are
renumeration not falling under any of the exceptions
listed in 207(e)(1)-(8).  Defendants contend that none of
these buy-backs are paid as compensation for Holyoke
firefighters' hours of employment, and that they are all,
therefore, excludable under section 207(e)(2).

     Section 207(e)(2) provides that "payments made for
occasional periods when no work is performed due to
vacation, holiday, illness, . . . or other similar cause;
. . . [or] other similar payments to an employee which
are not made as compensation for his hours of employment"
are excludable from the "regular rate."  29 U.S.C. §
207(e)(2).  It is plain that the value of the accrued
time in dispute, if utilized by the firefighters for its
intended purpose, would be excluded under 207(e)(2).  The
question before the court is whether a lump sum payment,

12

keyed to time accrued for the causes listed in section 207(e)(2), although paid later under a buy-back program, is also excludable under that section.

### i. Holiday and vacation time buy-back.

As to payments for accrued holiday and vacation time, the law is clear that these payments are excludable under section 207(e)(2) regardless of whether they are paid contemporaneously for days missed or are deferred and paid in a lump sum. Department of Labor Regulations explicitly provide that the 207(e)(2) exclusion applies even when an employee foregoes a day off but still receives the pay. 29 C.F.R. § 778.219(a). Accordingly, holiday and vacation buy-back payments are excluded under section 207(e)(2) and need not be included in the regular rate under the FLSA.

### ii. Personal time buy-back.

Similarly, buy-back payments for personal time are excludable from the regular rate under the FLSA. Personal time, like holiday and vacation time, is paid idle time which, subject to scheduling restrictions, may be used by firefighters at their discretion as a matter of right. Therefore, personal time buy-back payments are excludable under section 207(e)(2). 29 C.F.R. § 778.219(a).

However, one wrinkle remains.  Under the terms of
the CBA, unused personal time is cashed in at one hundred
and ten percent (110%) of that year's rate. (CBA ¶ 33.0
(D)).  It appears that this ten percent premium
represents an incentive bonus for employees who forego
taking personal days.  Because the express terms of CBA
make this ten percent bonus non-discretionary, see id.
("[t]he payout shall occur in January of the following
year"), it must be included in the "regular rate" under
the FLSA.  29 U.S.C. § 7(e)(3)(a); 29 C.F.R. 778.211(c).
See also Walling v. Harnischfeger Corp., 325 U.S. 427,
431 (U.S. 1945) (noting that employees "who receive
incentive bonuses in addition to their guaranteed base
pay clearly receive a greater regular rate than the
minimum base rate").

iii. Sick leave buy-back.

The slightly more difficult question concerns
whether remuneration in the form of buy-back payments for
unused sick leave time is includable in the "regular
rate" under the FLSA.  Article 11 of the CBA provides
Holyoke firefighters with three opportunities to sell
accrued but unused sick leave time back to the city.[3]

_____

[3] First, employees who use three or less sick days in each
calendar year are entitled to additional "incentive days"

Unlike vacation and holiday time, the Department of Labor regulations do not address whether section 207(e)(2) excludes the value of deferred <u>sick</u> leave time from the FLSA's regular rate.  <u>See</u> 29 C.F.R. § 778.219(a) (discussing only vacation and holiday pay).

In a closely analogous case, however, the Eighth Circuit has held that "sick leave buy-back monies constitute remuneration for employment" because "in contrast to § 207(e)(2) payments, [they] are awarded to employees for coming to work consistently, not for work that was never performed."  <u>Acton v. City of Columbia</u>, 436 F.3d 969, 977 (8th Cir. 2006).  In so holding, the <u>Acton</u> court reasoned that "the primary effect of the buy-back program is to encourage firefighters to come to work regularly over a significant period of their employment tenure" and concluded that the buy-back payments awarded to employees for not using accrued sick leave were akin

_____

off in the following year which, if unused, will be bought back by the city. (CBA ¶ 11.09.)  Second, employees who accrue in excess of two-thousand sick leave hours (the maximum number allowed under the CBA) are entitled to a "sick leave buy back bonus" equal to their rate of pay multiplied by the number of hours over two thousand accrued. (CBA ¶ 11.15.)  Finally, in the event of an employee's retirement, resignation, or death, the employee (or the employee's spouse if the employee has died) is entitled to half of all accumulated sick leave time up to a maximum of 1000 hours. (CBA ¶ 11.06.)

to non-discretionary bonuses that compensated them for
fulfilling their general attendance duties.  Id. at 979.

This interpretation has not been adopted by all
courts.  The Sixth Circuit, in a case cited by
Defendants, has come to the opposite conclusion, holding
simply that "awards for nonuse of sick leave are similar
to payments made when no work is performed due to
illness, which may be excluded from the regular rate
[under 29 U.S.C. § 207(e)(2)]."  Featsent v. City of
Youngstown, 70 F.3d 900, 905 (6th Cir. 1995).  The First
Circuit, for its part, has yet to weigh in on the issue.

Having considered all of the available authority,
the court finds the reasoning of Acton persuasive.  Here,
as in Acton, firefighters must have worked for a period
of time sufficient to accumulate a certain amount of
leave in order to qualify for buy-back pay.  Moreover, by
its own terms, the CBA refers to its various sick leave
buy-back provisions as "incentive days" and "sick leave
buy back bonuses."  These facts militate toward the
conclusion that sick leave buy-back payments provided for
in the CBA are more akin to non-discretionary incentive
bonuses includable under 29 C.F.R. 778.211(c) than
remuneration for work that was never performed and
therefore excludable under 207(e)(2).  See 29 C.F.R.

778.211 (expressly including "[a]ttendance bonuses" in the regular rate of pay).  It is also pertinent that this position has been adopted by the Department of Labor in a 2009 wage and hour opinion letter, 2009 DOLWH LEXIS 23 (DOLWH 2009).[4]  Finally, the court finds this position to be the most consistent with the First Circuit's gloss on section 207(e), that its "exceptions are to be interpreted narrowly against the employer . . . ." O'Brien, 350 F.3d at 294.

For these reasons, the court finds that sick leave buy-back pay is remuneration that must be included in the calculation of the FLSA regular rate of pay.

b. Off Duty/Detail pay.

In addition to their regular duties, some Plaintiffs perform additional outside work -- referred to as "details" or "off-duty work" -- that is assigned to them on a voluntary basis when they are not regularly scheduled to be on duty.  The FLSA is clear that "special

---

[4] Although the opinion letter does not bind this court's analysis, the court can consider its persuasive effect. See Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944) ("[T]he rulings, interpretations and opinions of the [agency], while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.").

detail" compensation for hours worked on behalf of
"separate and independent" employers is excludable from
the calculation of FLSA overtime.  29 U.S.C. § 207(p).
Department of Labor regulations specify that the hours
worked for another entity will be exempt under §
207(p)(1)'s special detail work exemption so long as (1)
the special detail assignment is undertaken and performed
solely at the employee's option, and (2) the two
employers are "in fact separate and independent."  29
C.F.R. § 553.227(b).  <u>See</u> <u>also</u> <u>Nolan v. City of Chicago</u>,
125 F. Supp. 2d 324, 336 (N.D.Ill. 2000).

　　　Plaintiffs do not dispute that a Holyoke fire-
fighter's decision to perform off-duty detail work is
purely voluntary.  Their sole contention is that the
outside vendors for whom they perform duty work are not,
in fact, separate and independent because: (1) when
firefighters perform duty work, they receive payment via
their regular payroll check; (2) the amount of pay
received by firefighters for detail work is non-
negotiable (except by the Union during collective
bargaining); (3) firefighters do not receive insurance
benefits or retirement benefits, or worker's compensation
from the third-party vendors; and (4) firefighters are

required to wear their uniforms while working detail or off duty.

Each of these assertions, however, is contrary to the applicable Department of Labor regulations which provide:

> The primary employer may facilitate the employment or affect the conditions of employment of such employees. For example, a police department may <u>maintain a roster</u> of officers who wish to perform such work. The department may also select the officers for special details from a list of those wishing to participate, <u>negotiate their pay</u>, and retain a fee for administrative expenses. The department may require that the separate and independent employer pay the fee for such services directly to the department, and <u>establish procedures for the officers to receive their pay for the special details through the agency's payroll</u> system. Finally, the department may require that the officers observe their normal standards of conduct during such details and take disciplinary action against those who fail to do so.

29 C.F.R. § 553.227(d) (emphasis added).

Accordingly, the FLSA does not require that Plaintiffs' "detail" work be included in the calculation of the regular rate of pay.

c. <u>Student Awareness of Fire Education ("SAFE") Pay</u>.

Some Holyoke firefighters receive pay for fire prevention and education duties performed under the grant-funded Student Awareness of Fire Education ("SAFE") program. SAFE work performed while a firefighter is on regularly

scheduled duty is compensated at the standard contractual
rate of pay, while SAFE work performed outside of a
firefighter's regular duty cycle is compensated as overtime
at one and one half times the contractual rate of pay. (Dkt.
No. 157, Ex. D, LaFond Dep. 37: 8-18.)[5]

Here, to the degree that SAFE payments represent
additional remuneration at all (_i.e.,_ to the degree that
they are not already included in Plaintiffs' regular pay),
they are excludable from the regular rate under sections
207(e)(5) and (7) of the FLSA.  Each of these provisions
permits employers to exclude properly compensated overtime
payments from the "regular rate" of pay under the FLSA.  See
29 U.S.C. § 207(e)(5) (excluding "extra compensation
provided by a premium rate paid for certain hours . . . in
excess of the employee's normal working hours or regular
working hours"); 29 U.S.C. § 207(e)(7) (excluding time and a
half compensation "for work outside of the hours established
in good faith by the contract or agreement as the basic,
normal, or regular workday").  See also 29 C.F.R. 778.202.
Because, as the record demonstrates, SAFE work performed

---

[5] Plaintiffs' assertion that "there is no evidence that SAFE
Pay is at least one and one-half times either the contract
rate or the regular rate for like work performed in
nonovertime hours on other days," (Dkt. No. 156, Plfs.' Mem.
in Supp. of its Mot. for Summ. J. as to Wage Augments, 16),
has no record support.

outside of a firefighter's regular duty cycle is already
compensated as overtime, the FLSA does not require that
Defendants include such time in the calculation of the
FLSA's regular rate of pay.

3. <u>Laches</u>.

In their answer, Defendants assert that Plaintiffs'
FLSA claims are barred by the equitable doctrine of laches.
(Dkt. No. 133, Answer, at 18.)   The doctrine of laches may
bar a claim that was raised after an inexcusable delay.
<u>Vaqueria Tres Monjitas, Inc. v. Irizarry</u>, 587 F.3d 464, 480
(1st Cir. 2009).   Defendants argue, in essence, that
Plaintiffs knew or should have known about the City's
practice of computing overtime as early as 1994 and,
therefore, that the delay in bringing their FLSA claims was
both inexcusable and prejudicial.

The affirmative defense of laches, however, is not
available to Defendants in this action.   The Supreme Court
has held that when "Congress explicitly puts a limit upon
the time for enforcing a right which it created, there is an
end of the matter.   The Congressional statute of limitation
is definitive."   <u>Holmberg v. Armbrecht</u>, 327 U.S. 392, 395
(1946).   Here, Congress expressly included a statute of
limitations period for actions under the FLSA.   29 U.S.C. §

255(a).[6]  It is beyond the power of this court to equitably
bar Plaintiffs from asserting any claim timely filed within
this express statute of limitations.  Lyons P'ship, L.P. v.
Morris Costumes, Inc., 243 F.3d 789, 798 (4th Cir. 2001).
See also Mark v. Labar, 2009 U.S. Dist. LEXIS 27951 (S.D.
Fla. Apr. 1, 2009) ("laches is not an applicable defense to
a FLSA action"); Herman v. Suwannee Swifty Stores, Inc., 19
F. Supp. 2d 1365, 1374 (M. D. Ga. 1998); Donovan v. I & J,
Inc., 567 F. Supp. 93, 105 (D.N.M. 1983).

Accordingly, Plaintiffs' motion for summary judgment on
the issue of laches (Dkt. 152) will be allowed.

4. Liquidated Damages.

Plaintiffs move for summary judgment on the issue of
liquidated damages.  Section 216(b) provides that an
employer who violates FLSA "shall be liable to the employee
or employees affected in the amount of their unpaid minimum
wages, or their unpaid overtime compensation, as the case
may be, and in an additional equal amount as liquidated
damages."  29 U.S.C. § 216(b).  Because it compensates
employees for the unlawful delay of sums legally due, the
awarding of liquidated damages is the norm under the FLSA.

---

[6] Ordinarily violations of the FLSA are subject to a statute
of limitations period of two years, except that a cause of
action establishing a willful violation will permit a three
(3) year statute of limitations. 29 U.S.C. §255(a).

See <u>Lupien v. City of Marlborough</u>, 387 F.3d 83, 90 (1st Cir. 2004) (citing <u>Brooklyn Sav. Bank v. O'Neil</u>, 324 U.S. 697, 715-16 (1945)).  "The only way an employer can escape liquidated damages is to show to the satisfaction of the court that it acted in good faith and had reasonable grounds for believing that its acts did not violate the FLSA."  <u>Chao v. Hotel Oasis, Inc.</u>, 493 F.3d 26, 35 (1st Cir. 2007).

While the burden on a Defendant seeking to escape liquidated damages is heavy, the very question of liquidated damages presupposes a stipulated or adjudicated violation of the act.  Here, Defendants have made no such stipulation. Moreover, this court's determination that Defendants are entitled to claim a section 207(k) partial exception to the FLSA's overtime requirements, and the concomitant fact that Plaintiffs were only entitled to overtime compensation for hours worked in excess of 61 in an eight-day period, casts considerable doubt on whether liability will eventually be found.  Insofar as the issue of Defendants' violation of the FLSA has yet to be determined, a determination of Defendants' good faith for purposes of deciding liquidated damages as to Plaintiffs' overtime claims is premature. Accordingly, Plaintiffs' Motion for Partial Summary Judgment on the issue of liquidated damages will be denied.

5. <u>Waiver, Accord and Satisfaction</u>.

In their Sixth, Sixteenth, and Seventeenth Affirmative
Defenses, Defendants assert that Paragraph 15.05 of the CBA,
which reflects an agreement between Plaintiffs' Union and
Plaintiffs' employer on the issue of compensation for
overtime, effectively waives Plaintiffs' right to sue under
the FLSA as it constitutes a valid accord and satisfaction
of Plaintiffs' overtime claims.  Paragraph 15.05 of the CBA
states that:

> Firefighters on the rotating shift shall receive a
> two and one-half percent (2.5%) wage increase added
> to the base rate of pay as set forth in paragraph
> 12.01. The intent of this provision is to compensate
> firefighters on the rotating shift that work on
> average forty-two (42) hours per week, exclusive of
> any other benefits, monies or overtime. The Union,
> on behalf of itself and its members, hereby
> expressly waives any right to grieve, claim or
> institute any arbitration, prohibited practice
> charge or any other administrative or judicial
> action alleging that the firefighters on the
> rotating shift are entitled to any additional
> compensation, except as provided in this paragraph,
> for working an average work week of forty-two (42)
> hours per week.

Plaintiffs' seek summary judgment with regard to
these defenses contending: (1) that the doctrines of
waiver, accord and satisfaction are not a valid defense
to an action under the FLSA; (2) that there is not enough
evidence to support an accord and satisfaction defense in
this case; and (3) that, in any event, the purported
waiver contained in paragraph 15.05 of the CBA is not

sufficiently clear and unmistakable so as to waive
Plaintiffs' rights under the FLSA.  The court agrees.
Assuming arguendo that Defendants can sufficiently
demonstrate an accord and satisfaction, the waiver
produced does not specify the statutory rights at issue
and is unenforceable as a matter of law.

Courts have traditionally disfavored allowing
individuals to waive, release, or compromise substantive
statutory rights guaranteed by the FLSA by private
settlement.  To do so, courts have reasoned, would allow
parties to circumvent Congress's remedial intent to
protect private employees from the harmful effects of
unequal bargaining power between employers and employees.
See Barrentine v. Ark.-Best Freight Sys., Inc., 450 U.S.
728, 740 (1981); Brooklyn Savings Bank v. O'Neil, 324
U.S. 697, 704 (1945); Urbino v. Puerto Rico R. L. & P.
Co., 164 F.2d 12, 14 (1st Cir. 1947).  Accord School
Committee of Brockton v. Massachusetts Com. against
Discrimination, 386 N.E.2d 1240, 1244 (Mass. 1979);
Newton v. Comm'r of the Dep't of Youth Servs., 816 N.E.2d
993, 995 (Mass. App. Ct. 2004).

In the collective bargaining context, the Supreme
Court has recognized exceptions to this general rule,
finding that some statutory waivers, such as those

contained in a binding arbitration clause, <u>may</u> be
enforceable.  <u>14 Penn Plaza LLC</u>, 129 S. Ct. at 1463.
However, a purported waiver of statutory rights, even
when contained in a collective bargaining agreement, will
not be enforceable unless it makes "clear and
unmistakable" that the waiver of those rights was
intended.  <u>See</u> <u>Wright v. Universal Mar. Serv. Corp.</u>, 525
U.S. 70, 79-80, 119 (1998); <u>O'Brien</u>, 350 F.3d at 285 (1st
Cir. 2003).

Here, the purported waiver fails -- either by
reference to "federal statutory claims" in general or to
the FLSA in particular -- to clearly and unmistakably
waive the FLSA's overtime provisions.  <u>See</u> <u>Bratten v. SSI</u>
<u>Servs., Inc.</u>, 185 F.3d 625, 631 (6th Cir. 1999)
(suggesting that "a statute must specifically be
mentioned in a CBA for it to even approach <u>Wright</u>'s
'clear and unmistakable' standard").  <u>See</u> <u>also</u> <u>14 Penn</u>
<u>Plaza</u>, 129 S. Ct. at 1461 (finding waiver of a judicial
forum valid where provision expressly included claims
under Title VII, the ADA, and the ADEA).

Accordingly, Plaintiffs' Motion for Partial Summary
Judgment on the issue of waiver will be allowed.

6. <u>Mass. Gen. Laws ch. 151, § 1A to municipal employers</u>.

26

Finally, in Count III of the complaint, Plaintiffs seek compensation for overtime pursuant to the Massachusetts Minimum Fair Wages Act, Mass. Gen. Laws ch. 151, §§ 1A, 1B.  Subject to a number of exemptions not applicable here, the overtime provisions of the Fair Wages Act require all employers in Massachusetts to compensate an employee "at a rate not less than one and one half times the regular rate at which he is employed" for work in excess of forty hours in a week.  Mass. Gen. Laws ch. 151, § 1A.  The statute provides that "[a]ny employer" who fails to pay the required overtime may be held liable to the employee in a civil suit "for the full amount of the overtime rate of compensation less any amount actually paid to him by the employer."  Mass. Gen. Laws ch. 151, § 1B.

Defendants have moved for judgment in their favor on Count III on the ground that the Fair Wages Act is inapplicable to municipal employers as a matter of law. (Dkt. No. 141.)  They argue that the legislature did not intend the City of Holyoke, a political subdivision of the Commonwealth, to be included within the statutory definition of "any employer" and, consequently, that the City retains its municipal immunity and is thus shielded from suit.

Historically, municipalities and other political subdivisions in Massachusetts have enjoyed immunity from civil suit rooted in state sovereignty.  Bennett v. City of Holyoke, 362 F.3d 1, 12 (1st Cir. 2004); Todino v. Town of Wellfleet, 860 N.E.2d 1, 4 (Mass. 2007) ("Municipal liability implicates the doctrine of sovereign immunity, which protects the public treasury from unanticipated money judgments.").  This doctrine is deeply anchored in the law of the Commonwealth.  Indeed, while the legislature has the power to abrogate municipal immunity by statute, the Supreme Judicial Court ("SJC") has often held that consent to suit will be assumed only where it has been "expressed by the terms of a statute, or appears by necessary implication from them."  Locator Servs. Group, Ltd. v. Treasurer & Receiver Gen., 825 N.E.2d 78, 96 (Mass. 2005) (citations omitted). Moreover, even a statute that has been found to have abrogated immunity to some extent must be construed "narrowly" so as to avoid "extend[ing] a plaintiff's right to recover against a sovereign 'beyond those [rights] expressly conferred by statute.'"  Bennett, 362 F.3d at 12 (quoting Broadhurst v. Dir. of Div. of Emp. Sec., 369 N.E.2d 1018, 1023 (Mass. 1977)).

28

Consonant with these principles, "[i]t is a widely
accepted rule of statutory construction that general
words in a statute such as 'persons' will not ordinarily
be construed to include the State or political
subdivisions thereof."  Perez v. Boston Housing
Authority, 331 N.E.2d 801, 805 (Mass. 1975) (quoting
Hansen v. Commonwealth, 181 N.E.2d 843, 847 (Mass.
1962)).

In opposition to Defendants' citation to this well
entrenched rule, Plaintiffs point to a decision involving
a state law barring gender discrimination in employment,
in which the SJC rejected an attempted defense of
municipal immunity.  In Jancey v. School Comm. of
Everett, 658 N.E.2d 162, 172-73 (Mass. 1995), the SJC
held that "[m]unicipal employees can clearly sue their
employer" under the Massachusetts Equal Pay Act ("MEPA"),
Mass. Gen. Laws ch. 149, § 105A, even absent an express
reference to municipalities.  Id. at 172.  Finding that
the statutory definitions of the terms "employee,"
"employer," and "employment" in MEPA were "quite broad"
and "appear[ed] on their face to encompass employers and
employees in both the public and private sectors", the
Jancey court reasoned that "[i]f the Legislature had
intended to exclude public employment from coverage, it

could have done so by express language" Id.  The decision
contained no discussion of the broader doctrine of
municipal immunity well established in Massachusetts law.

Plaintiffs emphasize the apparent tension between
the SJC's holding in Jancey, which appears to assume
municipal liability absent express exclusion by the
legislature in the MEPA context, and the SJC's statements
that "the rules of construction governing statutory
waivers of sovereign immunity are stringent."  DeRoche v.
Mass. Comm'n Against Discrimination, 848 N.E.2d 1197,
1205-1206 (Mass. 2006) (citing cases).

In confronting Jancey, on the one hand, and the
powerful body of state immunity law on the other, the
court has considered certifying the question of municipal
immunity to suits based upon the Massachusetts Minimum
Fair Wages Act to the SJC for definitive resolution.[7]

With some hesitation, the court has decided not to
do this.  The lengthy effort to effect a settlement of
Plaintiffs' claims (with this court's encouragement) has

---

[7] See Mass. S.J.C. R. 1:03 § 1 (providing for certification
"if there are involved in any proceeding before [a federal
district court] questions of law of this State which may be
determinative of the cause then pending in the certifying
court and as to which it appears to the certifying court
there is no controlling precedent in the decision of this
court").

already led to considerable delay in the resolution of this case, and the parties will face substantial additional work even after the rulings contained in this memorandum are rendered.

More importantly, the detailed statutes granting municipalities the power to establish minimum and maximum wages for their employees, Mass. Gen. Laws ch. 41, § 108A, to establish their hours, days, and weeks of work, Mass. Gen. Laws ch. 40, § 21A, and to opt among three methods of establishing their regular and overtime hours, Mass. Gen. Laws ch. 149, §§ 33A-33C,[8] provide convincing evidence that the legislature never intended to jettison the doctrine of municipal immunity in order to permit suits by municipal employees under the state's Fair Wages Act.

Some decisional authority supports this conclusion. In Grenier v. Hubbardston, 388 N.E.2d 718, 719 (Mass. App. Ct. 1979), a Massachusetts Appeals Court rescript opinion states that municipally employed fire department

---

[8] Sections 33A-33C make adoption by a municipality optional. Each provision expressly provides that its terms will be binding only if a municipality "opts-in" by specifically adopting the legislation.  Defendants have presented documents (see Dkt. No. 140, Ex. 1) that show that the City of Holyoke formally opted-in to the overtime provisions contained in section 33A in 1947.

dispatchers were not entitled to recover the difference between their rate of pay and the statutory minimum wage under Mass. Gen. Laws ch. 151, § 1.  While offering minimal analysis, the Grenier court clearly based its holding on the notion that statutes regulating persons and corporations engaged in trade "are ordinarily construed not to apply to the Commonwealth or its political subdivisions unless the Legislature has expressly or by clear implication so provided."  Id.[9]

    Given this authority, the court finds that it is able, with adequate confidence, to make a "reasonably clear" prediction of the SJC's holding on this issue. Bi-Rite Enterprises, Inc. v. Bruce Miner Co., 757 F.2d 440, 443 (1st Cir. 1985).  Accordingly, the court will Allow Defendants' motion for summary judgment on Count III of the complaint.

## VI. CONCLUSION

    For the reasons stated herein, the court hereby rules on the pending motions as follows:

- Plaintiffs' motion with regard to the FLSA's 207(K) partial exception (Dkt. No. 164) is DENIED;

---

[9] This position was adopted by the Massachusetts Attorney General's office in a 2002 Opinion Letter addressing the applicability of section 1A to municipalities.  (Dkt. No. 140, Ex. 3).

- Plaintiffs' motion with regard to the inclusion of contractual wage augments in the FLSA's "regular rate" of pay (Dkt. No. 155) is DENIED insofar as it seeks to include personal time buy-backs; vacation time buy-backs; holiday time buy-backs; detail pay; and Student Awareness of Fire Education ("SAFE") pay, and in all other respects is ALLOWED;

- Plaintiffs' motion with regard to the applicability of Defendants' laches affirmative defense (Dkt. No. 152) is ALLOWED;

- Plaintiffs' motion with regard to the applicability of the doctrines of accord and satisfaction and waiver (Dkt. No. 161) is ALLOWED; and Plaintiffs' motion with regard to liquidated damages under the FLSA (Dkt. No. 158) is DENIED without prejudice.

- Plaintiffs' motions to strike (Dkt. Nos. 179 & 180) are DENIED.

- Defendants' motion for partial summary judgment with regard to the FLSA's 207(K) partial exception (Dkt. No. 167) is ALLOWED.

- Plaintiff's motion seeking judgment regarding the applicability of Massachusetts Minimum Fair Wage law to municipal employers (Dkt. No. 134) is DENIED and Defendant's cross motion for summary judgment on this issue (Dkt. No. 141) is ALLOWED.

- The clerk will set this case for a status conference to discuss future proceedings.

    It is So Ordered.


                                        /s/ Michael A. Ponsor
                                        MICHAEL A. PONSOR
                                        U. S. District Judge